UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GERALDINE MILLS, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>STEVE BROWN and<br>JOYCE BROWN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. 03-422L |
| GERALDINE MILLS, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>DEBORAH CINQUEGRANA and<br>BRIAN CINQUEGRANA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 03-457L |

DECISION AND ORDER

Ronald R. Lagueux, Senior United States District Judge

These matters are before the Court on an "appeal" filed by Plaintiff, Geraldine Mills to a Report and Recommendation issued by Magistrate Judge David Martin in each case counseling dismissal of each case; and to a Memorandum and Order applicable to both cases denying Plaintiff's Motions to Amend her original

complaints and to Submit Portions of Medical Records.[1]

Defendants Deborah and Brian Cinquegrana ("the Cinquegranas") also object to Judge Martin's recommendation that their Motion for Sanctions be denied. Defendants Steve and Joyce Brown ("the Browns") have not filed any objection to the Report and Recommendation or the Memorandum and Order applicable to their case.

Although these two cases were separately filed and are not consolidated, they will be considered together since they involve the same issues of law. Where appropriate, the Browns and the Cinquegranas will be referred to collectively as "Defendants".

As this Court has noted in the past, review of a magistrate judge's report and recommendation is de novo. See 28 U.S.C. § 636; Local Rule 32(c)(2); R.I. Med. Soc'y v. Whitehouse, 323 F. Supp. 2d 283, 286-287 (D.R.I., 2004). After reviewing the record, and considering the memoranda submitted by the parties, this Court, agrees that Defendants' Motions to Dismiss should be granted because it is apparent that this Court has no federal question or diversity jurisdiction over these two cases. This Court also agrees that Plaintiff's Motions to Amend each Complaint should be denied because the proposed amendment does not cure the jurisdictional infirmity that plagues her original

[1]This Court will treat Plaintiff's "appeal" as an objection to the Report and Recommendation in each case.

filing.

Lastly, this Court agrees with Judge Martin's recommendation that Plaintiff not be sanctioned at this time -with the caveat that she will be subject to sanctions should she further pursue the instant matters in this forum.

BACKGROUND

Plaintiff filed her Complaint against the Browns on September 18, 2003 and against the Cinquegranas on October 3, 2003. The substance of her complaints arises from a hearing held by the Rhode Island Board of Medical Licensure and Discipline ("the Board") in which Defendants participated.[2] In "Count One" of the Complaint in the Cinquegrana case Plaintiff contends that the Cinquegranas testified with malicious intent to harm Plaintiff. In its distilled form, Plaintiff seems to allege that those defendants' "malicious" testimony and statements tortiously interfered with her livelihood, caused her to lose business and income and caused her to suffer from emotional distress.

---

[2]On July 10, 2001, a hearing panel of the Rhode Island Board of Medical Licensure and Discipline issued a decision to suspend Plaintiff's license to practice medicine indefinitely. See Mills v. Nolan, No. PC 01-4153, 2003 WL 22790706, at *1 (R.I. Sup. Ct. Nov. 13, 2003). The panel's decision was approved by the Director of Health on July 11, 2001, and Plaintiff sought review of the decision in the Rhode Island Superior Court. See id. Judge Daniel Procaccini of that Court upheld the decision on Nov. 13, 2003, in a lengthy written opinion. See id. Plaintiff filed a petition for certiorari in the Rhode Island Supreme Court on December 5, 2003. That Court denied her petition on September 23, 2004 (No. 03-626).

"Count Two" contains a substantially similar claim, alleging that defendants, with "malicious intent" and "ill will" tortiously interfered with Plaintiff's livelihood "by fabrications then as to the manner in which [their daughter] Tori was cared for". At the root of "Count Two" is the contention by Plaintiff that defendants' complaint filed with the Board was the "means" by which defendants interfered with her livelihood.

Additionally, her complaint against the Cinquegranas contains allegations that defendants' failure to sign medical release forms for the release of their children's medical records was in violation of Rhode Island law; and that this failure to sign formed the foundation for defendants' initial complaint to the Board which resulted in her subsequent loss of license. Plaintiff alleges that the failure by the Cinquegranas to sign the medical releases indicates that they acted with "malicious intent" and "ill will" thereby tortiously interfering with Plaintiff's livelihood.

Plaintiff makes similarly constructed allegations against the Browns. However, she goes further still, accusing the Browns of actually abusing their children, and, essentially that their testimony to the Board was some form of cover-up for the alleged abuse. Plaintiff also seems to intimate that Steve Brown's position with the Rhode Island Department of Children, Youth & Families in some way exacerbated the cover-up of the alleged

abuse. In the end, however, the legal claims against the Browns are the same: malicious testimony before the Board causing Plaintiff to suffer financial and emotional damages.

The Cinquegranas responded to the allegations with their Motion to Dismiss on December 16, 2003; the Browns responded in similar fashion on December 22, 2003. In their Fed. R. Civ. Pro. R. 12(b)(1) motions Defendants argue that the Complaint filed in each case contains no federal question nor diversity jurisdiction allegations and, therefore, there is no subject matter jurisdiction in this Court.

On December 29, 2003, Plaintiff filed her Motion to Submit Records, her Motion to Amend, and a document entitled "Objection to the Motion to Dismiss" in each case. Additionally, Plaintiff filed a Motion to Expand Attachments to Memorandum Amend (sic) on January 5, 2004, which this Court granted on January 8, 2004. Plaintiff subsequently filed additional exhibits on January 27, 2004.

Plaintiff failed, however, to submit a copy of her proposed amended complaint with the Motions to Amend, and consequently, Judge Martin issued an order directing her to do so within fifteen days.[3] In response to Judge Martin's Order, Plaintiff

---

[3]As Judge Martin notes, his Order included a footnote which excerpted the relevant portions of Fed. R. Civ. P. 8 to which Plaintiff's attention was directed, including the following:

> **Claims for Relief.** A pleading which sets forth a claim

submitted her Proposed Amended Complaints on February 9, 2004.

On March 8, 2004, a hearing was held before Judge Martin, on the Motions to Dismiss, the Motions to Amend, Plaintiff's Motions to Submit Records, and the Cinquegranas' Motion for Sanctions. During the hearing Plaintiff acknowledged that her Complaints, which contained no allegations sufficient to show federal jurisdiction, did not comply with Rule 8, and she requested that her Motions to Amend be granted. At close of the hearing, Judge Martin took each of the matters under advisement and stayed all discovery pending issuance of his written opinion.

On April 21, 2004, Judge Martin issued a Report and Recommendation in each case, along with a Memorandum and Order denying Plaintiff's Motions to Amend. As noted above, Judge Martin recommended dismissal of both Complaints but does not recommend sanctioning Plaintiff -his reasoning essentially being that benefit of the doubt must be afforded to pro se plaintiffs regarding their lack of understanding of complex areas of law.

---

> for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) <u>a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it</u>, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

Fed. R. Civ. P. 8(a) (2004)(emphasis added).

DISCUSSION

This Court, after review, adopts Judge Martin's recommendation -but not all his reasoning- regarding Defendants' Motions to Dismiss, and now limns its own reasoning to support dismissal of these two cases. A review of the papers filed by Plaintiff, along with the observations made by Judge Martin in each Report and Recommendation make it clear that Plaintiff's Complaints assert no basis for the exercise of federal jurisdiction in these cases and that is readily apparent. In recommending dismissal of the Complaints, Judge Martin makes note of this. However, he goes further still, relying on the Rooker-Feldman doctrine[4] along with case law granting immunity from civil rights suits for witnesses giving testimony in judicial proceedings, as further support for his recommendations of dismissal.

The first three paragraphs of the Cinquegrana Complaint read as follows:

> 1. Plaintiff is an individual residing in Warwick Rhode Island, County of Kent and is a Pediatrician.
> 2. Defendants Deborah and Brian Cinquegrana are parents of two girls who were in the medical care of the Plaintiff. They reside in Warwick Rhode Island. This case is brought with reference to their representations to

[4]The duo of cases that make up what is popularly known as the Rooker-Feldman doctrine are Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); and, District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

> the Board of Medical Licensure in Providence, R.I. on October 5, 2000 which resulted in the tortious interference of the Plaintiff's livelihood.
> 3. Damages alleged are such as to confer jurisdiction of this matter before the Honorable United States District Court.

Complaint, paragraphs 1-3.[5]

As is readily apparent, Plaintiff -apart from her bare-bones assertion that the "[d]amages alleged" confer jurisdiction on this Court- has failed to allege any legitimate grounds for filing these cases in this Court. Each Complaint, alleges a species of tortious interference claim in each of the counts and fails to raise a federal question; the tort claims being grounded such as they are in state common and statutory law. Moreover, despite general allegations that Defendants have violated her rights, Plaintiff has neither alleged, nor demonstrated the basic grounds upon which such allegations must be founded in order to pass jurisdictional muster; namely that Defendants are state actors. Rather, she acknowledges that they are private individuals, acting in their capacity as complainants on behalf of their children before the Board.

There being no allegations giving rise to federal question jurisdiction, Plaintiff has likewise failed to allege diversity jurisdiction; to the contrary, in the opening paragraphs of her

---

[5]The first three paragraphs of the complaint against the Browns make substantively similar allegations.

Complaints she states that both she and Defendants reside in Rhode Island. Given Plaintiff's obvious inability to allege diversity of citizenship between the parties, this Court must conclude that diversity jurisdiction does not exist and need not enter into discussion regarding Plaintiff's failure to assert the amount in controversy necessary to trigger diversity jurisdiction in cases where diversity of citizenship has been appropriately alleged.

1. No Federal Question Jurisdiction

The statute conferring federal question jurisdiction upon this Court states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331 (2005).

Therefore, for federal question jurisdiction to exist, a controverted question of federal law must form a substantial part of the plaintiff's case. See e.g., McFaddin Express, Inc. v. Adley Corp., 240 F. Supp. 791, 794 (D. Conn., 1965)(quoting, Gully v. First Nat'l Bank, 299 U.S. 109(1936)). Despite passing reference to alleged violations of her civil rights, and her later use of the Fourteenth Amendment in her Proposed Amended Complaints, the remedies which Plaintiff seeks in each case sound in tort. In all of their essential features the claims asserted by Plaintiff are based upon Defendants' allegedly malicious testimony before the Board which led to her loss of license.

Every question which is raised depends for decision upon conventional local or general common law concepts and doctrines of tort to enforce Plaintiff's purely private rights. In determining whether or not Plaintiff's livelihood has been tortiously interfered with by Defendants, it would undoubtedly be necessary to refer to or consult Rhode Island tort law and related statutes to determine if a cause of action is, in fact, available. There exists, therefore, no federal statute upon which Plaintiff's alternately named tortious and malicious testimony claims are founded.

The case and statutory law are unequivocal: the basis for the subject matter jurisdiction of the federal district courts is limited and is set forth in § 1331. A party seeking relief in a district court must at least plead facts which bring the action within the court's jurisdiction. See Fed. R. Civ. P. 8(a)(1)(2005). Failure to plead such facts warrants dismissal of the action. Fed. R. Civ. P. 12(h)(3)(2005; Gray v. Internal Affairs Bureau, 292 F. Supp. 2d 475, 476 (D.N.Y., 2003)(emphasis added). Plaintiff has made no allegations to support a federal cause of action, and this, together with Plaintiff's failure to plead diversity of citizenship, leaves this Court no alternative but to grant Defendants' motions to dismiss. Manway Constr. Co., Inc. v. Housing Auth. of City of Hartford, 711 F.2d 501, 503 (2d Cir. 1983) (Courts must dismiss cases for lack of subject matter

jurisdiction).

As Judge Martin notes, Plaintiff attempts to remedy this in her Proposed Amended Complaints, by alleging that the Fourteenth Amendment provides grounds upon which this Court's jurisdiction may rest, while citing no statutes, federal or otherwise, which would allow this Court to hear this action. As Judge Martin correctly points out: "The Fourteenth Amendment, while guaranteeing certain rights, provides no vehicle for redress of violations of these rights. An enabling statute, 42 U.S.C. § 1983, provides the means for bringing suit for alleged constitutional violations. A § 1983 claim may, however, only be brought against one acting under color of state law." Okropiridze v. St. Jude Children's Research Hosp., Civ. A. No. 95-254, 1995 WL 339021, at *2 (E.D. Pa. June 1, 1995); see also Alexis v. McDonald's Rests. of Massachusetts, Inc., 67 F.3d 341, 351 (1st Cir. 1995)("A section 1983 claim does not lie absent state action.").

Judge Martin goes further in his skillful delineation of the state actor requirement under the Fourteenth Amendment, and its statutory progeny, noting that there are two components to the "state action" requirement. First, the deprivation must be shown to have been caused by the exercise of some right or privilege created by the state, or by a rule of conduct imposed by the state, or by a person for whom the state is responsible. Casa

Marie[, Inc. v. Superior Court of P.R., 988 F.2d 252, 258 (1st Cir. 1993). Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. Id. Where a private individual is a defendant in a section 1983 action, there must be a showing that the private party and the state actor jointly deprived plaintiff of her civil rights. Wagenmann v. Adams, 829 F.2d 196, 209 (1st Cir.1987); Casa Marie, 988 F.2d at 258-59; see also Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S.Ct. 183, 186-187, 66 L.Ed.2d 185 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions."). Alexis, 67 F.3d at 351.

Thus, he correctly concludes, a § 1983 action may not be brought against private actors. See Brown v. Newberger, 291 F.3d 89, 93 (1st Cir. 2002). The test for determining whether one can be considered a state actor is:

> (1) whether there was an elaborate financial or regulatory nexus between [defendants] and the government ... which compelled [defendants] to act as they did, (2) an assumption by [defendants] of a traditionally public function, or (3) a symbiotic relationship involving the sharing of profits.

Brown v. Newberger, 291 F.3d at 93 (quoting Ponce v. Basketball Fed'n of the Commonwealth of Puerto Rico, 760 F.2d 375, 377 (1st Cir. 1985))(second alteration in original). Applying this test, it is apparent that the Browns and the

Cinquegranas are not state actors. There is no elaborate financial or regulatory nexus between them and the State of Rhode Island, nor does Plaintiff allege any such arrangement in her initial Complaint. Defendants did not assume a traditionally public function, and there is no symbiotic relationship between them and the State involving the sharing of profits.

Therefore, Defendants did not act under color of state law when they filed their complaints with the Board. See Auster Oil & Gas, Inc. v. Stream, 764 F.2d 381, 388 (5th Cir. 1985)("[A] private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority."); Tarkowski v. Robert Bartlett Realty Co., 644 F.2d 1204, 1208 (7th Cir. 1980)("A private person does not conspire with a state official merely by invoking an exercise of the state official's authority."); Serbalik v. Gray, 27 F.Supp.2d 127, 132 (N.D.N.Y. 1998)(holding that neighbors who filed complaint with Town regarding plaintiff's alleged failed septic system and who loaned bucket and hose to Town inspector, watched him perform test, observed the results, and reported their observations to him were not engaged in "state action"); cf. Andresen v. Diorio, 349 F.3d 8, 13 (1st Cir. 2003)("[I]t is settled that the fact that private parties give the police information on which official action is then taken does not by itself convert the private parties into state actors."); Daniel v. Ferguson, 839

F.2d 1124, 1130 (5th Cir.1988)(holding that even if private defendant did provide police with false information, the state action requirement for § 1983 liability was not satisfied since "[p]olice reliance in making an arrest on information given by a private party does not make the private party a state actor"); id. ("The execution by a private party of a sworn complaint, which forms the basis for an arrest, is, without more, not sufficient to make that party's acts state action.") (internal quotation marks omitted); Grow v. Fisher, 523 F.2d 875, 879 (7th Cir. 1975)(finding that private persons who were complainants and witnesses in criminal prosecution were not acting under color of state law).

Similarly, Judge Martin also correctly concludes that Defendants did not act under the color of state law when they testified before the Board. See Briscoe v. LaHue, 460 U.S. 325, 329-30, 103 S.Ct. 1108, 1112-13, 75 L.Ed.2d 96 (1983)("[W]hen a private party gives testimony in open court in a criminal trial, that act is not performed under color of law.")(internal quotation marks omitted); Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980)("[P]articipation by a private party in litigation, without more, does not constitute state action, a necessary precondition to a section 1983 claim.") (citations omitted).

Lastly, Judge Martin is correct when he notes that

Plaintiff's allegation that Defendants acted with malice and the intent to harm her, does not alter the obvious, Defendants are simply not state actors. See Johnson v. Miller, 680 F.2d 39, 40 (7th Cir. 1982)(holding that the filing of a criminal complaint with the police is the act of a private citizen and that while a groundless complaint may violate state tort law, it does not alter the private character of the complainant). Because Defendants were not acting under color of state law, an action against them pursuant to § 1983 is barred, and Judge Martin was correct in denying her Motion to Amend on this ground.

2. No Diversity Jurisdiction

As this case involves no federal question, jurisdiction stands or falls upon diversity of citizenship. The statute conferring diversity jurisdiction upon this Court states in pertinent part:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between--
> (1) Citizens of different States;
> (2) citizens of a State and citizens or subjects of a foreign state;
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties...

28 USCS § 1332 (2005)(emphasis added).

It has long been settled that a "lack of 'complete diversity' between the parties deprives the federal courts of

jurisdiction over the lawsuit." Casas Office Machs. v. Mita Copystar Am., 42 F.3d 668, 673-674 (1st Cir., 1994) (quoting Sweeney v. Westvaco Co., 926 F.2d 29, 41 (1st Cir. 1991). Here, there exists neither complete, nor even incomplete diversity. Plaintiff states in her complaint that both she and Defendants are residents of Rhode Island, and therefore, the inquiry need go no further. Plaintiff neither alleges, nor can allege diversity jurisdiction. Since she also failed to assert federal question jurisdiction, she may not proceed in this Court and her Complaints must be dismissed for lack of subject matter jurisdiction. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178 (1936).

3. The Rooker-Feldman Doctrine

In his Memorandum and Order of April 21, 2004, denying Plaintiff's Motions to Amend, Judge Martin relies in large part on the Rooker-Feldman doctrine as a jurisdictional bar to Plaintiff's claims. He concludes that pursuant to Rooker-Feldman, this Court has no jurisdiction over Plaintiff's amended claims.

It is worthy of note that the United States Supreme Court, in Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 125 S. Ct. 1517 (2005) had recent occasion to revisit the Rooker-Feldman doctrine. In Exxon Mobil, the Court restated its holding that application of Rooker-Feldman must be confined to cases of the

kind from which the doctrine acquired its name: "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." Exxon Mobil Corp., 125 S. Ct. at 1521-1522.

Plaintiff's claims against these Defendants do not fall precisely into this category. She has not filed (and lost) a case against the Defendants in state court; rather she is here having failed in her state court claims against the Board. In order to invoke Rooker-Feldman, Judge Martin concludes that Plaintiff's amended claims against the Defendants are "inextricably intertwined" with the state court's judgment in her case against the Board. Feldman, 460 U.S. at 462.

While such a conclusion may be accurate, and arguably may cause these cases to fall under the Supreme Court's latest version of the Rooker-Feldman doctrine, such reasoning need not be employed here. Rather, assertion of the Rooker-Feldman doctrine as a jurisdictional bar is appropriate only where Plaintiff has overcome the initial jurisdictional bars. See Feldman, 460 U.S., at 476; Verizon Md. Inc. v. Public Serv.

Comm'n of Md., 535 U.S. 635, 644, n. 3 (2002). Here, this Court having concluded that Plaintiff has simply failed to assert subject matter jurisdiction in its most basic form, need not and may not go further. Application of the Rooker-Feldman doctrine is, therefore, neither appropriate, nor necessary in this instance.

4. Immunity

In his April 21, 2004 Memorandum and Order denying Plaintiff's Motions to Amend, Judge Martin also relies on quasi-judicial immunity. He opines that because Defendants testified before the Board, in a quasi-judicial proceeding, they are thus immune from civil suit, rendering Plaintiff's motion futile.

However, much like Judge Martin's use of the Rooker-Feldman doctrine, application of immunity concepts is simply unnecessary here. Plaintiff's initial Complaints and subsequent Proposed Amended Complaints do not make allegations sufficient to confer jurisdiction on this Court. Lacking jurisdiction, this Court should go no further as this case must be dismissed on lack of jurisdiction grounds alone. 28 U.S.C. §§ 1331-1332 (2005); See also Wilbert v. Unum Life Ins. Co., 981 F. Supp. 61, 62 (D.R.I., 1997).

5. The Cinquegranas' Motion for Sanctions

As noted above, Plaintiff may not pursue her grievances in this Court. However, despite round after round of adverse

rulings, Plaintiff persists in pursuing the matter, choosing to "appeal" Judge Martin's Report and Recommendation and in so doing, causing Defendants to expend additional resources in their defense.

Plaintiff's behavior stands in stark contrast to that of Defendants. Rather than pursuing sanctions, or recovery of attorneys' fees spent in defense of what are unquestionably frivolous claims, both sets of defendants were prepared to accept Judge Martin's findings -despite an unfavorable recommendation regarding the Cinquegranas' Motion for Sanctions. It was only subsequent to Plaintiff's self-styled "appeal" of Judge Martin's findings that the Cinquegranas filed papers requesting that this Court revisit the issue of sanctions.

As for the rule itself, Fed. R. Civ. P. 11(b) states in pertinent part:

> (b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
> ....

Fed. R. Civ. Pro. R. 11 (2004).

Rule 11, therefore, by its terms allows this Court to impose sanctions on a plaintiff who files a complaint without some minimum of previous investigation, here, clearly missing. See

Unioil, Inc. v. E.F. Hutton & Co., 802 F.2d 1080, 1089-91 (9th Cir. 1986); Westmoreland v. CBS, Inc., 248 U.S. App. D.C. 255, 770 F.2d 1168, 1173-75 (D.C. Cir. 1985). The rule is applicable to this case; and by its express terms it is applicable to parties who are unrepresented, such as Plaintiff. Shrock v. Altru Nurses Registry, 810 F.2d 658, 661-662 (7th Cir. 1987).

Rule 11 sanctions may apply to anyone who signs a pleading, motion, or other paper, including pro se plaintiffs. See Fed R.Civ. P. R. 11; Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 498 U.S. 533 (1991). Although, as noted by Judge Martin, pleadings filed by pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers," Report and Recommendation, CA 03-457L (2004), Haines v. Kerner, 404 U.S. 519 (1972), all litigants, including those filing pro se, have an obligation to comply with court orders and with the Federal Rules of Civil Procedure. Vitale v. First Fid. Leasing Group, Inc., 187 F.R.D. 445, 448 (D. Conn. 1999)(admonishing pro se litigant that further filings arising from same nexus of factual and legal allegations will give rise to Rule 11 Sanctions); quoting McDonald v. Head Criminal Court Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988).

The Rule does not list other factors that a court should consider in deciding whether to impose a sanction and what sanction to impose. However, as described in 2-11 Moore's Federal

Practice Civil § 11.23 ("Moore's"), the Advisory Committee Note suggests the following factors for the Court's consideration: whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

The Eleventh Circuit has condensed the factors described above to three types of conduct that warrant Rule 11 sanctions: (1) when a party files a pleading that has no reasonable factual basis; (2) when a party files a pleading that is based on legal theory that has <u>no reasonable chance of success and that cannot be advanced as reasonable argument to change existing law</u>; and, (3) when a party files a pleading in bad faith or for improper purpose. <u>Schramek v. Jones</u>, 161 F.R.D. 119, 120 (D. Fla., 1995)(emphasis added); quoting <u>Didie v. Howes</u>, 988 F.2d 1097 (11th Cir. 1993). Other Courts have also held that Rule 11 sanctions are applicable when a signed paper is submitted to the

court under the aforementioned conditions. See, e.g., Burnette v. Godshall, 828 F. Supp. 1439 (N.D.Cal. 1993).

This Circuit too has held that when an attorney or an unrepresented party submits a pleading, motion, or other paper to a federal court, his signature constitutes a certification that he has read it and formed a belief after reasonable inquiry that it is (1) well grounded in fact; (2) warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and, (3) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Rule 11 states that when a pleading, motion, or other paper violates this rule, the court may impose sanctions. See Hoover, 774 F. Supp. at 64-65; quoting LeFebvre v. Commissioner, 830 F.2d 417, 420 (1st Cir. 1987). The panel goes on to state that while pro se pleadings are viewed less stringently, court decisions and Rule 11 itself indicate that the Rule applies to represented and pro se parties alike. Id.; See also Merrigan v. Affiliated Bankshares of Colorado, Inc., 775 F. Supp. 1408 (D. Colo. 1991), aff'd 956 F.2d 278, cert. den., 506 U.S. 823 (1992).

Subsequent to this Decision and Order Plaintiff cannot now deny that her behavior implicates many of the factors listed in Moore's: her lack of legal basis for filing in this Court infects the case in its entirety, this instant complaint is part of a

pattern of activity that includes multiple lawsuits and complaints arising from the same nexus of fact[6], her multiple and disparate filings have had a negative effect on this and other Courts' efficient administration of justice.

Though Defendants have been wronged by Plaintiff, and though district courts have the power to sanction a plaintiff notwithstanding that there ultimately proves to be a lack of subject matter jurisdiction over the case, See Willy v. Coastal Corp., 915 F.2d 965, 967 (5th Cir. 1990); Wojan v. General Motors Corp., 851 F.2d 969, 972 (7th Cir. 1988); Orange Production Credit Assoc. v. Frontline Ventures, Ltd., 792 F.2d 797, 801 (9th Cir. 1986), this Court is also realistic in recognizing the pro se status of Plaintiff in this case; and therefore agrees with Judge Martin that to actually sanction Plaintiff is not appropriate at this juncture. However, Plaintiff has now been effectively warned -further pursuit of this matter will result in sanctions as described above. The case ends here.

Lastly, it is worthy of note that Defendants are not without remedy should Plaintiff choose to pursue her action against them in state court. This case is tailor-made for application of the Strategic Litigation Against Public Participation Act (anti-SLAPP

[6]This Court notes that Plaintiff has similar cases arising from the Board proceedings pending against defendants similarly situated to the Browns and Cinquegranas in other courts within this jurisdiction.

statute), *R.I. Gen. Laws* § 9-33-1, et seq. (2005). Not only would the statute provide immunity to Defendants for their testimony before the Board, it would also provide for costs, reasonable attorneys' fees, and even punitive damages should a court find that Plaintiffs' claims were frivolous or brought with the intent to harass. *R.I. Gen. Laws* § 9-33-2 (d)(2005). Plaintiff, should she decide to continue, does so at her own peril, facing certain sanctions in this Court and possible costs, attorneys' fees and punitive damages in state court.

## CONCLUSION

The Defendants' Motions to Dismiss are hereby granted in each case and the Cinquegranas' Motion for Rule 11 Sanctions against the Plaintiff is denied.

The Clerk shall forthwith enter judgment for the Defendants in each case to the effect that this Court does not have subject matter jurisdiction.

It is so ordered.

Ronald R. Lagueux
Senior Judge
June 8, 2005