UNITED STATES ~~COURT OF APPEALS~~
~~FIRST DISTRICT~~ DISTRICT COURT

GERALDINE MILLS, M.D.
Plaintiff, prose

v.

STEVE BROWN and
JOYCE BROWN,
Defendants,

C.A.NO: 03-422L
03-457L

GERALDINE MILLS, M.D.
Plaintiff, prose

DEBORAH CINQUEGRANA and
BRIAN CINQUEGRANA,
Defendants

PLAINTIFF'S APPEAL OF DECISION AND ORDER
TO DISMISS CASE

Plaintiff, Geraldine Mills, M.D. appeals this case to your Honorable First District United States Court of Appeals. Decision and Order to dismiss this case was entered as judgment for the Defendants by Justice Ronald R. Lagueux on June 8, 2005.

BACKGROUND

Plaintiff filed her Complaint on or about September and October 2003 against two parties ( Browns and Cinquegranas heretofore referred to as "B" and "C" ). The substance of the complaints arises from actions and words spoken by both parties prior to, during, and after a Hearing before the Rhode Island Medical Licensing Board in which both parties testified.

Both parties partook in actions and words which had no factual basis, were unreasonable whereby it is only with ill will, malicious intent, and enmity, that they did so act and speak. The

end result was for Plaintiff to lose her good reputation, her medical business ( property interest and livelihood), finding herself unable to obtain other gainful work, as well as for her and her family to suffer financial losses and emotional stress.

As the Decision and Order reads at footnote 2 page 3, "On July 10, 2001 a hearing panel of the RI Board of Medical Licensure and Discipline issues a decision to suspend Plaintiff's license to practice medicine indefinitely..... Plaintiff sought review of the decision in the RI Superior Court. ....Judge Daniel Procaccini of that Court upheld the decision on Nov. 13, 2003 in a lengthy written opinion.... Plaintiff filed a petition of certiorari in the RI Supreme Court on December 5, 2003. That Court denied her petition on September 23, 2004."

FEDERAL QUESTIONS

The Decision and Order reads, " there exists, therefore, no federal statute upon which Plaintiff's alternately named tortious and malicious testimony claims are founded." It furthers " Plaintiff has made no allegations to support a federal cause of action..."

The claim raises many Federal questions as 1) the Defendants are state actors 2) the record is "Totally devoid of evidence," 3) there is deprivation of life, liberty and property as well as equal protection of law and due process. The RI Court in its decision makes little if no reference to the serious Federal issues presented by Plaintiff. Rather, the RI Court decision reads in part, " Despite passing reference to alleged violations of her civil rights, and her later use of the Fourteenth Amendment in her Proposed Amended Complaints, the remedies which Plaintiff seeks in each case sound in tort. In all of their essential features the claims asserted by Plaintiff are based upon Defendants' allegedly malicious testimony before the Board which led

to her loss of license. Every question which is raised depends for decision upon conventional local or general common law concepts and doctrines of tort to enforce Plaintiff's purely private rights."

This is not the case as clearly delineated in the travel of the case. With the C's, the issues involved the release of confidential health care information on two children for which the parents adamantly refused to sign medical release forms. This is required by Federal law (HPPA) to protect individuals from abuses of private medical information. It is a serious allegation against a Physician to allege the latter refused to transfer patient records while at the same time refusing to sign to allow this to occur. (In fact all information as immunization records were released to all parties in need of them-daycare, succeeding physician, and parents- attached to the release forms which were never returned to the Plaintiff).

The issue of transfer of confidential health care information is a Federal question. The State of Rhode Island and these parties (Defendants) acting as state actors or as private individuals aiding and abetting the State colluded and by doing so forced this Plaintiff Physician to defy Federal law. Plaintiff was forced with threat of suspension, to release the medical records on the C's children never having received their written authorization to do so.

Without the actions of the C's, the State of RI could not have indefinitely suspended Plaintiff's medical license and taken her livelihood and property interest. Plaintiff has never had any malpractice suits, never injured or harmed any patients, and in fact has helped so many patients by correct diagnoses and her medical care.

It is question for the jury of peers and with discovery to determine if in fact as the Decision reads, ".... there is no symbiotic relationship between them and the State involving

sharing of profits." The Decision cites the case of Serbalik v, Gray 27 F. Supp.2d 127, 132 (N.D. N.Y. 1998) (" holding that neighbors who filed complaint with Town regarding plaintiff's alleged failed septic system and who loaned bucket and hose to Town inspector, watched him perform test, observed results, and reported their observations to him were not engaged in "state action"). In the instant case the C's refused to sign Federally and State required medical release forms. It is a question for a jury as to whether they did this as individuals, state actors, or as parties aiding the state. Regardless of which category, it violates Federal laws to obtain such confidential health care information without written authorization to allow their release.

The Decision furthers that " it is settled that the fact that private parties give the police information on which official action is then taken does not by itself convert the private parties into state actors." In this case the Defendants committed an act - refusing to sign required medical releases, then informed the State that Plaintiff simply refused to release their children's medical records. In fact, the parents differed in their contrived stories- the father stating he signed a release form, the mother stated that he did not. They further fabricated that they were given stipulations that the Plaintiff would not release the records unless they paid all the monies owed Plaintiff. The mother wrote, " she would let him sign the release form when he went back with all the monies owed." Yet the father wrote in affidavit that he signed the release forms.

This is quite more than simply observing results, reporting observations, but is partaking in a fraudulent act of deception and collusion.

The issue of tape-recording and tampering with such a recording is a Federal question. If not for the B's activity, the State would not have the only one other allegation against Plaintiff.

Plaintiff had become victim to several toxic environmental properties which housed her medical practice during the time period of July 19, 1996 until September 22, 1999- the date she was told to cease medically caring for her patients. All parents of her patients were informed as to the environmental contamination so as to understand the need for Plaintiff to do house calls to care for these children without disrupting the continuity of their care. These were real, not imagined and not delusional environmental toxic sites. The decision by Judge Daniel Procaccini though lengthy in its written format, was devoid of any reasonable search for truth. It reads in part, " Mills herself testified that DEM ( RI Department of Environmental Management) did not confirm the contamination to the property." Mills' testimony did not read as such. Mills testified that DEM did not inform her as to the contamination that had been present at the building for four and one half years. Plaintiff had purchased an office building which was described at the closing as " environmentally safe." DEM was not even at the closing. After Mills purchased the property and as the winter months progressed, Mills detected odors of turpentine in the building. Mills monitored the building and received back confirmatory tests that there were gasoline vapors in explosive levels in the ambient airs of the building. Later review of the DEM records revealed that DEM had been informed that the adjoining gasoline station had underground tanks that had leaked. DEM was advised to investigate buildings in the area- in particular basements of the commercial and residential buildings abutting the gasoline station. This was not done until Plaintiff in this case gave DEM the report of 90.6 ppm of gasoline in her building on February 5, 1999. On or about February 10, 1999 and again on September 22, 1999 Mills tendered these results, DEM reports and actual soil samples ( taken from below her buildings'

basement by Dr Horace F. Martin), to the RI Medical License Board Investigating Committee but she was completely rebuffed by all. Noone at that meeting wanted to do what they were legally paid to do - investigate for the truth. It is fact that this building at 107 Warwick Ave had been adversely affected by an underground storage tank leak from Speedy Oil Petroleum as well possibly by prior ownership. Former Attorney General Sheldon Whitehouse brought suit against Speedy Oil in the same Superior Court in which Plaintiff Mills was not allowed any supporting evidence or witnesses to any of these very events. This property is still being remediated by the State of R.I. The pipes extracting harmful toxic vapors still can be seen exiting the exterior of the building.

This brings the instant appeal to the testimony of one Joyce Brown ( mother of patients of Plaintiff and wife of State of RI Child Abuse investigator Steve Brown).

B testified that Mills was " irrational and bizarre" to believe that there were gasoline vapors in her building and that benzene was present and there was a need to test her blood for benzene. The B's were informed of the contamination on February 2, 1999 when they made an unscheduled sick visit to Plaintiff's office for four members of their family including the mother ( she stated she could not reach her own primary care doctor). Aware of this information they persisted in making written complaint to the RI Medical Board and following this up with testimony that Plaintiff was according to them, " suicidal or mentally ill or suffering from some paranoia, psychosis or the like." The B's also told this very same thing to the DCYF (Department of Children Youth and Families as it is written in a CPS Protocol Report regarding a SUSPICION and CONCERN for more than 29 serious injuries to two of the children in this family placed by the Plaintiff).

It is a Federal issue if a tape recording is tampered with and altered and later presented to a third party for use against an individual. It is a Federal issue when funds from the Under-Ground Storage Tank are used by a State as Rhode Island to continue to clean up a toxic waste site alerted to the State by this Plaintiff. It is a Federal issue or should be when a citizen of these United States is denied the right to report a suspicion of or concern for many injuries to two children ( includes a NEAR SIDS, jaw fracture, skull fracture, arm fractures, fireworks burns lacerations from dogs, bruises, and multiple of more injuries to the same two children and in this case one must add to those of a child abuse investigator).

No thorough investigation took place as it should by the State of RI. In fact in testimony the B's admit to the usual procedure not done and the answer to why usual protocol was not followed was according to the B's, Plaintiff was " mentally ill." The B's were not educated in Psychiatry nor in Environmental issues when they testified. Their statements could only have been made with ill will, malicious intent and enmity. Again this is for a jury to decide.

Again Plaintiff was denied all witnesses and all supporting evidence at all levels of her struggle to prove her innocence and regain her rightful employment. These witnesses included well reknown child abuse expert Randell Alexander, M.D. and the statements of Marc Feldman, M.D. Munchaussen by proxy expert. Alexander wrote to Plaintiff's counsel that it would be " rare" to see this many injuries to two children and at least the issue of supervision of these children needed to be looked at. When it came to the issue of the NEAR SIDS event, the records still remain on microfiche at a Bridgeport Hospital in Connecticut. Even after motions for subpoena by Plaintiff, the RI Courts denied Plaintiff the right to see these medical records. Joyce Brown told all Pediatricians ( those seeing her children prior to

Mills as well as Mills herself) that these NEAR SIDS records were " lost in the Navy." She alleged that the father moved about a lot for his job and therefore many of the old medical records were lost. Those records the mother did hand deliver to Mills ( only after two to three years elapsed) were reviewed by handwriting analyst and found to be tampered with as well. Again this expert witness was not allowed to testify for Plaintiff.

At page 4 Decision it reads that " However, she goes further still accusing the Browns of actually abusing their children and that their testimony to the Board was some form of cover-up for alleged abuse." This is absolutely not truthful and is a prejudiced statement or take on the entire situation. There is a huge difference between having a suspicion and actually accusing someone of some act. Plaintiff agrees fully with the assessment made by Dr Alexander, child abuse expert, that it would have been rare to have that many injuries in one family, that it needed to be investigated to rule in or out the suspicion and that the NEAR SIDS records should have been allowed by subpoena in this case. The father testifying the NEAR SIDS took place in Ledyard and the mother testifying differently- stating Bridgeport, the parents and McIntyre stating the neck injury took place on a chaperoned school visit to an amusement park in Mass. When there were no such school trips (per Assistant superintendent Rouleaux) all further increase the suspicion. However, this Plaintiff never actually accused the Browns of abusing their children, only of having a suspicion.

DIVERSITY OF CITIZENSHIP

As stated the deprivation of ones life. Liberty and property, due process and equal protection of law are present in the instant case. The Plaintiff's constitutional rights to prove

her innocence to the myriad of false allegations is the Federal question. It encompassed the 1) 14th Amendment of the Constitution, the enabling statute 1983, 2) elements of standing per Article III, 3) the injury in fact requirement, 4) the Court's familiarity with state law, state actors, and the issue of being told one Defendant party had moved to Florida after leaving their residence in Warwick, R.I.

The court simply ignores all issues presented by Plaintiff in her motion to amend- all those issues which support the subject matter of jurisdiction being in its proper forum in this court. The true futility would have occurred if the case had been brought to state court where there would have been no chance of success with regards to the state employee Brown. It is and has been an advantage to judicial economy to have brought this case directly to this court and avoided what the lower court stated in its memorandum @ pg 7, "... Plaintiffs must instead seek review through state court system and if necessary petition the United States Supreme Court for a writ of certiorari." This would disrupt the balance of convenience, placing more burden on all parties.

It is fact that this Plaintiff has had several cases heard in both the Federal and State Courts in R.I. and in not one case has she been afforded her right to have supporting evidence. Justice Robert Flanders ( resigned this year from Supreme Court) signed a motion for Plaintiff to have her supporting evidence in Mills vs. Medical Board and McIntyre but the case was dismissed almost immediately after,virtually leaving this evidence excluded from the entire case. The same set of circumstances occurred in Mills vs Beaulieu, State Sales, Weisberg, Nahabedian case regarding the toxic carpet installed in Plaintiff's medical office. The 100% proof of VOC's from court ordered sampling of carpet 5 years later, was allowed on the record just hours before

allegations, humiliation, embarrassment, and to put an end to this ":nightmare," as the Defendant's counsel so rightly described the situation.

The standing requirements of Article III as to 1) whether Plaintiff suffered harm and 2) the interest sought to be protected is arguably within the zone of interests protected by the statute or constitutional guaranty in question and have been met. As noted in 1 Fed Proc, L. Ed at pg 49 1:12 ".... anyone who has suffered a palpable injury as a result of acts alleged to VIOLATE FEDERAL LAWS and whose injury is a legal injury has standing to sue." Bantam Books vs Sullivan. In Federal Rules of Evidence 103, it states that close examination of the facts in each individual case must be afforded and that the effects of erroneous ruling may not be predicated upon that which admits or excludes evidence unless a substantial right of the party is affected. The court will not hold an error in omitting or excluding evidence harmless where the error did not influence the jury or had but a very slight effect on the court's verdict. The court should not be substantially swayed by the error. This has occurred in all forums to date with this Plaintiff. These Defendants had not one shred of evidence to support their aiiegations and as will be shown the medical records ( placed on the record) refute their stories.

At the pleading stage, wherein this case is technically, per Federal Rules 1:12 at pg 47 " general factual allegations of injury resulting from the Defendant's conduct may suffice, for on a motion to dismiss, the court presumes that general allegations embrace those specific facts that are necessary to support the claim." Pennell vs San Jose (1988) 485.

The injury in fact requirement states there are three elements to meet the constitutional minimum 1) Plaintiff must have suffered an injury/invasion of a legally protected interest- this happened 2) there must be a causal connection - Defendants admit they were convinced, aided

by McIntyre and 3) it must be likely, not merely speculative that the injury will be addressed by a favorable decision- if in fact the prejudice, bias, slander, discrimination, corruption, and bigotry is set aside and the facts and evidence are reviewed as any judicial system should do, there cannot be an unfavorable conclusion for this Plaintiff and this unjust suffering would be overturned. Access to District Courts at 1:844 FRCP @ pg 646 states, " if the forum chosen by Plaintiff is convenient...no element of harassment in the choice of forum...the Plaintiff's choice of forum should not or rarely should be disturbed." At 1:939 FRCP pg 714, " the Plaintiff's forum should be respected so long as no harassment is intended... and a Defendant must establish that he has been oppressed and vexed out of all proportion to the Plaintiff's convenience." Thomson vs. Palmieir (1966 CA2 NY) 355 F 2d 64 As per FRCP 12 (b)(1), " where Defendant has challenged the jurisdiction, district court should give Plaintiff opportunity to present facts in support," Viqueira vs First Bank. A controversy of two citizens of Maryland was dismissed but then overturned by the District Court in Wiren vs Laws 1951, 90 US App. D.C. 105,194 F2d 873 There was no strong showing of the balance of convenience.

Lastly, is the court's familiarity with applicable state law. Since a lot of the issues presented have to do with RIGL and Federal laws - ex immunity, confidential health care information as per FRCP @ 1:865, " it is an advantage to have this case decided now at this level since it embodies elements of civil rights being not afforded a citizen. Van Dusen v Barrack (1964) 376 US 612 11 L.Ed F2d 945,84 S Ct 805 The court may weigh evidence as in Daniel vs Fergueson 839 F 2d 1124 such as testimony. The Defendants' testimony contradicts the evidence that is in the record and most certainly all the supporting evidence and witness testimony that was motioned to be on the record.

SUBJECT MATTER OF JURISDICTION

The claim sets out Federal issues which are 1) not frivolous 2) not unsubstantial- now losses of income nearly three quarters of a million dollars, more than $150,000 in legal fees ( rule 12b(1) FRCP) 3) decide issues of jurisdiction ( Trager vs. Rochelle Hospital), 4) real and immediate injury to date, and 5) no reasonable belief of Defendants' words or acts to be based in fact. It must be stressed that in contrast to what the RI Court alleges, this Plaintiff did not bring this case after a decision was made against Plaintiff in her license case. These issues were brought prior to that decision. Rule 12 (b)(1) states that a motion to dismiss cannot be granted for lack of subject matter jurisdiction if the complaint purports to set out federal claim and the claim is not frivolous and is not unsubstantial. It is clearly not frivolous to bring issues of mandatory ( federal and state) child abuse reporting, confidentiality of private health care information ( federal and state), issues of tampering with tape recordings ( even with RI state law of " one party consent") and altering the information to give to a third party, and tampering with health care records. "In deciding issue of jurisdiction pursuant to this Rule 12 b (1) motion the trial court has the discretion as to the manner of making factual determinations - PROVIDED PARTIES ARE AFFORDED FULL AND FAIR OPPORTUNITY TO BE HEARD." Trager vs New Rochelle Hospital Medical Center (1978, SD NY) 453 F Supp 516. Since the record in this case below is totally devoid of supporting evidence to the myriad of false allegations, even a careful review of the children's medical records would show the Medical Board and later ( after this case was filed, the Courts came to a completely erroneous conclusion which has deprived Plaintiff of her livelihood. The Federal question is why such Defendants would so act without a shred of evidence, without any investigation into the issues first and prior to making false

allegations. How they acted, state actors or private individuals abetting state officials is important as to jurisdiction as are the issues. The question for the jury is then are these Defendants state actors, private parties, or private parties acting with state officials. It is clear when one reads the Brown complaint, " You Mr McIntyre convinced me to write this letter ( complaint)," and with Cinquegrana's own testimony, " the man in the blue shirt and red tie ( pointing to McIntyre) aided me in writing my complaint." It can then be only through discovery and a question then for the jury to determine if 1) there was an elaborate financial or regulatory nexus...which compelled the Defendants to act as they did 2) a symbiotic relationship involving sharing of profits..." It needs to be determined why this set of events took place in the first place- who and what was to be gained for it most certainly was not a health care quality issue.

Plaintiff did file the claims under 28 U.S.C. 1331 and 42 U.S.C. 1983 which is being relied upon to authorize this court's jurisdiction. Two components to the " state action" requirement are 1) exercise of some right or privilege created by the state, or by a rule of conduct imposed by the state or by a person for whom the state is responsible." 2) "... private individual is a defendant in a section 1983 action, there must be a showing that the private party and the state actor jointly deprived plaintiff of her civil rights."

Throughout the Decision, it reads with reference to the Plaintiff's claim as only one of the " alleged malicious testimony of the Defendants before the Medical Board." This is not what this case is totally about. It is about acts as going to your Physicians' office and taping them without their knowledge, taking the tape and altering it and then giving it to a third party with malicious intent to do harm to them. It is not just about how and what these Defendants alleged and testified to but it is about acts that violate Federal laws. Again it is about refusal

to sign for confidential health care information and then fabricating a story to get the records and never having to sign. Would it make any sense to believe that these Defendants would want to destroy a career of a Physician because they did not want to pay a $20.00 copying and transfer fee? The Medical Board does not want you to even believe that; so they were not acting as private individuals.

If it were simply a claim against private individuals for stating their opinions to a medical board, then one could conclude as this court did , that it was simply a case based on tort and only state and local issues. This is not the instant case.

The lower court based its decision on the Rooker-Feldman doctrine by stating that " the doctrine provides that lower federal courts do not have subject matter jurisdiction to review state court decisions." This Plaintiff, as the court now furthers, did not file against the Defendants in state court. Had Justsice Procaccini overturned the Board's decision prior to September 2003 the instant case would still have been brought. The Defendants did give the Board information but again it is not just this issue but is the issue of their actions violating laws both state and Federal. So this case is not barred by 1) those actually decided in state court and 2)" inextricably intertwined" with a state court judgment. Again the case is brought to afford Plaintiff due process and would not change even if Mills' license were reinstated. Brown's altering a tape and the C family's refusal to sign medical releases but obtaining medical records anyway are in violation of Plaintiff's due process and equal protection of law. The court barred Plaintiff the opportunity to amend her complaint as per Fed. R. Civ. P. 15 a) which provides leave to amend a complaint and it " shall be freely given when justice so requires." The court ignored the issues which support subject matter jurisdiction being in its proper forum in this court. This court addresses the most

recent case of Exxon Mobil Corp v Saudi Basic Indus Corp 2005 and states that,".... Rooker Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow Federal courts to stay or dismiss proceedings." The furthers that "....arguably may cause these cases to fall under the Supreme Court's latest version of the Rooker Feldman doctrine.... such reasoning need not be employed here...." and so because the Plaintiff allegedly has not met " initial jurisdictional bars."

The issues are again 1) are the Defendants state actors- Plaintiff states yes. 2) Are the Defendants protected by absolute immunity- Plaintiff states no and 3) is this court with or without subject matter jurisdiction. The lower court stated that because this is a Federal claim the Defendants are not affected by RI Gen Laws 5-37-1.5 which grants immunity to witnesses for statements made in " good faith." It read, "....because 42 U.S.C 1983 is a federal statute not state law, is controlling as to the scope of immunity enjoyed by witnesses before the Board." Again it is not just their testimony before the Board at issue here and the HCQIA Act provides for the same immunity from damages in all peer review processes if they comply with certain standards as 1) must be with reasonable belief that they are furthering the health care quality not fulfilled by these Defendants ( look at Brown alleging that there were no contaminants in Plaintiff's buildings- a claim that would harm individuals because she was unable to or refused to accept the facts for whatever reasons she had) 2) a full review of the facts must be made and only then is a reasonable belief that such actions are warranted by these facts is there immunity- again in this one example- there was NO review of the facts.

As a side but clearly relevant to that fact that NO review of the facts was undertaken is the testimony of the Board's only " expert" witness. He repeatedly stated, " assuming that all the

information given to me is true." When asked if he knew if Mills' building contained hydrocarbons he answered, " I don't know." Mills did not bring suit against him because he did state these words, " assuming all the information given to him was true and assuming he was given all the information necessary to form a reasonable opinion in the matter- clearly shows he was working for the Board and not as a private individual- but that he was protecting himself from civil liability by repeatedly stating he was only given so much information as the Board wanted him to know. Even though acting in collusion as well, he was able to get the message across that it was not his fault that he did not know. If Mills were only out to harm those individuals involved this would never have been a consideration- all players would be sued. Dr Eden had his own career to protect.

These Defendants under Federal Law cannot be afforded immunity as a matter of law because it was not done with reasonable belief that any of their actions were for furtherance of health care quality. It is amended that HCQIA focuses soley on the reasonableness of the belief. In one of the most recent cases, Timothy Patrick vs Burget et al, it was decided that private parties cannot claim state action immunity because entities as Board of Medicine Health Departments and State Judiciary systems do not have REVIEW over private decisions such as medical peer review. The key word is effective review essential to provision of quality of health care.

SUBJECT TO CIVIL LIABILITY

The testimony has to be made in good faith immunity or it most certainly is subject to civil liability. Whether witnesses for the state ( see state actors-Federal question) they still are " under oath" to be truthful about representations to a State agency. They had no supporting

evidence to their allegations as in fact no supporting evidence was present on the whole record.

Since there are hundreds of allegations by the two families, the Plaintiff asks that she be reserved the right to adjoin these at a later date. Here it will suffice to use one example to show the need to not have a record totally devoid of supporting evidence. If the B's allege that Mills is irrational to believe there are gasoline vapors in her building and Mills alleges there are does it not behoove the State to have to show a preponderance of evidence as to whether there is or not. Can a State just accept at face value a Defendant's statement? Does that not prejudice the Plaintiff and deny her due process and equal protection of all law?

Based on this, it is for some other agenda ( not their own individual agendas) that these complaints were made. No attempts to investigate any of the Defendants' allegations were made. One more simple example is that allegation made by mother Joyce Brown. She alleges that Plaintiff did not place the copy of one daughter's meningitis immunization in her medical record. The RI Court and Hearing Board need only look at page 7 of the patient's medical record. It is the copy of the child's meningitis vaccine given by Mills and signed by the mother Joyce Brown. Joyce Brown testified and wrote, " all of our copays were paid at the time of the visits." Yet when asked in court, she admits to having paid Plaintiff $35.00 during one visit when their copays were only $5.00 each ( father being a State employee). When asked if she was being untruthful to the Medical Board, she testified, " I don't see it as untruthful." Clearly there is an issue of lack of credibility, an issue of concern regarding injuries, and at issue are the repeated statements made prior to the Hearing, during, and after by these Defendants regarding Plaintiff's mental status.

So in specific a Federal question exists as to why these parents as Defendants would

persist in making false allegations to the RI State Medical Board. There was absolutely no ill will shown by these Defendants until collusion with McIntyre/Board- as the Defendants themselves made statements both verbally and written to the contrary. Joyce Brown wrote on October 14, 1998, " we would never entrust the care of our children to anyone else." She signed "VERY!" to how she felt that Mills was regarding being personable and informative as a Physician ( on an in office survey). Parent C accosted Mills in a Department store where she worked and offered Mills a discount on clothing and appeared concerned when she learned Mills was traveling to Cancuun for a medical conference. Parent C explained she had gone there for her honeymoon and told Mills not to rent a car because the militia would check all Americans driving alone.

The issue is exactly that of state actors. When one learns that a Bruce W. McIntyre told a day care director on or about October 1, 1998 that " something is in the works for Mills to lose her license," the pieces of this very "bizarre" case fit into place.

CINQUEGRANA'S MOTION FOR SANCTIONS

The RI Court addresses a minimum of seven pages to the issue of sanctions. It uses the harshest of language including stating, "The case ends here." " Plaintiff has now been effectively warned-further pursuit of this matter will result in sanctions as described above." These were delineated and as the court continued, " Plaintiff should she decide to continue does so at her own peril, facing CERTAIN sanctions in this Court and possible costs, attorneys' fees and punitive damages in state court."

Bruce W. McIntyre ( investigating member of the Medical Board, Acting Chief Admin-

istrative Officer for the Medical Board and Counsel for the Board and Department of Health- all during the time of Mills' license case), as stated previously threatened Mills with suspension of her medical license if she did not transfer medical records on the two Cinquegrana children- even knowing that they did not sign authorized medical release forms for this to take place. This violated Mills' constitutional rights to abide by both state and federal laws as a Physician.

Now, this Court threatens outrightly, this Plaintiff, if she pursues a course which is not the way the State of RI or these Defendants want, but is one that allows this Plaintiff to stand up for her constitutional rights- due process and equal protection of law. This Plaintiff is not " harassing" any of these Defendants. This Plaintiff has only stood up for the children that she is mandated to protect- as with the issue of suspicion of child neglect, abuse, lack of care, and lack of supervision. This Plaintiff has only stood up for the privacy of these childrens' medical records and in the case of the Browns to see medical records the mother refused to allow anyone to see ( clearly makes the suspicion of abuse higher). No Physician can practice medicine with individuals of power dictating what laws can and cannot be broken to suit their whim or agenda. That is why this case is so very important and does merit a court outside the State courts to address these issues. It is clear by the State's own testimony, that Mr McIntyre prejudged and labeled this " harassment" when he wrote the Plaintiff, " harassed a father at his place of work." This means that the State placed an employee of the state above the laws, above any possibility of even lack of supervision of his own children. This is ludicrous and unreasonable. These Defendants testified that because Ed O'Donnell of DCYF socialized with the Browns that therefore nothing like abuse or lack of supervision or neglect could possibly occur in the Brown family. Would that make the opposite inference true as well- that Mr O'Donnell could not be

alleged to have committed any acts of abuse because the Browns socialized with him and knew him? This again is ludicrous and unreasonable.

This Court cannot and must not be allowed to label this harassment. The rights of this Plaintiff should be that someone review this case and it is of this Plaintiff's strongest of beliefs that with a proper review it will be found that there is something very awry with the whole sordid affair. The Plaintiff is destitute, almost in bankruptcy, and is only searching for the truth to be told. Case after case, as seen in the Jeffrey Hornoff case of R.I., reveals that injustices are done and can be overturned. This would never happen if the Plaintiff just gave up and quit the struggle for truth and what is righteous. It is this Plaintiff's strength that has gotten her through this horrific ordeal. It is not as the Brown mother testified when she alleged Mills was " mentally ill suicidal, irrational, bizarre, of unstable mind ( Counsel Currier's words in 2003)," but it is as Justice Robert Flanders wrote, " the corruption, bigotry, and discrimination that one could no longer dissent to." Justice Flanders signed a motion to allow Mills her supporting evidence in her case against Bruce McIntyre but it was never heard. It was denied arbitrarily by the RI Supreme Court.

Several statements are not based in fact as made by the Court. One is that the Decision about Mills' license was not even made when Mills brought the claims against these Defendants. As noted @ pg 17 Decision of RI Court, " ....rather she is here having failed in her state court claims against the Board." ( See Rooker -Feldman doctrine). This is not fact. Secondly, this RI Court states, " ....this instant complaint is part of a pattern of activity that includes MULTIPLE LAWSUITS and complaints arising from the same nexus of fact...." and additionally places the following in footnote @ pg 23 under #6, " this court notes that Plaintiff has similar

cases arising from the Board proceedings pending against defendants similarly situated to the Browns and Cinquegranas in other courts within this jurisdiction." The only other case excluding that against the Medical Board for the issues presented in this case wherein it appears as collusion, is that against Alfred Toselli, M.D. who did not testify against or for Mills and was not part of the license case. He admitted to " personally keeping Mills off staff at RI Hospital," and for slandering Mills " psychotic," according to Dr John J. Cronan of RI Hospital. It is believed that these individuals are those directly responsible for Mills having her license suspended. However, without some acts of so called " unprofessional conduct," the State could not simply by whim prevent Mills from practicing. They had to come up with " moles." This is not something this Plaintiff thought up but is clearly identified by Peer Review Organizations as the Semmelweis Society and others. They show step by step what these Medical Boards will do to harass, abuse their powers, and plant moles in medical offices of those " under fire."

The bias and prejudice of this Court is clearly rampant throughout this Decision and and was absolutely suspected as the outcome, which took nearly a year to produce. The " multiple and disparate filings," as this Court chose to label them were in the case of Toselli brought about because the State Court refused to address the entire case as one of slander and tort When one is so outwardly and clearly wronged, it is only the natural just progression of the events to attempt to protect ones' own interests. There has been no harm so grave as to warrant this Court's filing of such a decision. As soon as page 3 the Court states " with the caveat that she WILL BE subject to sanctions should she further pursue the instant motion in this forum." This Plaintiff has been the subject of derision, humiliation, embarrassment so severe as to hear her name on a "Paul and Andy" radio show wherein they said, " she examined women in cars

with their legs up over the seats." Since this Plaintiff was a Pediatrician and any teenagers that required any genital exams were referred to Gynecologists, this was highly unfair banter. The spoken and written words of the Defendants, in particular the Browns regarding Plaintiff's " mental status" was further unfair and clearly of malicious intent with no basis in fact.

This filing per Schramek v. Jone is not done in bad faith or for improper purpose. Plaintiff has been wrongfully dealt with, the issues for which the Brown and Ciniquegrana family alleged took place were not investigated, and no supporting evidence was allowed. When a Physician properly abides by all state and federal laws in the release of medical records and by mandate reports a suspicion of abuse to a state agency, there should be no question as to the just merit of such activity. Barred from these rights is to prevent any Physician or citizen the constitutional rights afforded them by being citizens. This pleading has factual basis as seen above and will have a chance of success if the bias and prejudice can be removed from the issues at hand.

As to being prose, it is held to a lesser standard. However, this is not by choice but because the actions of these Defendants have caused the Plaintiff to no longer have gainful employment ( again in particular due to the " mental issues" statements of Joyce Brown and her Counsel and as colluded with by the Board/McIntyre). Plaintiff is now destitute and without means of obtaining counsel.

In no way is this litigation intended to " injure" these Defendants. Plaintiff fully contacted all parties to try to come to an amicable settlement. Plaintiff did so even with the case against Dr Toselli. However, all this Plaintiff received in feedback were statements to the effect, " You need help"- meaning of the psychiatric type. Due to the case and because one cannot just state

they are cleared mentally and competent to practice medicine, this Plaintiff has seen at least 7 mental health professionals (Psychiatrists and Psychologists) and has been found by all to be competent to practice medicine and to have no psychopathology. The Medical Board has chosen for their agenda to not accept even a Board approved positive evaluation of Mills.

Plaintiff has aided the Brown children by her concern for the etiology of their injuries and repeated tetanus shots ( given at each injury even though not timely) and aided the youngest Cinquegrana child in her concern for her failing head circumference and persisting failure to maintain weight proportional to her height. No parent is going to be pleased at being suspected of playing a part in neglect of care or lack of supervision or even abuse of their own children. However, not being pleased or happy about such issues is a far cry from destroying a Physicians' entire life regarding it. Again these Defendants suffered no harm and had all the opportunity to settle the issues with Mills out of court without any expense to them. This Plaintiff is doing nothing malicious - is only protecting her rights and stating the facts and is still willing to settle these matters out of this or any other court. This would defer all further litigation far more easily than having to have the case heard in this First District Court of Appeals. This Plaintiff may not be allowed to request that further mediation between parties be afforded at this time by this Court, but without this knowledge does request this of this Court. Plaintiff is not in any way attempting even to defy a Court's orders but is not going to simply give up what she believes to be her constitutional right to obtain due process and equal protection and to right a very serious wrong that has been placed on her.

OTHER CASES DOCKETED

The Environmental cases still in litigation include one against Speedy Oil Petroleum

for the 12,000 gallon underground storage tank leak to the property at 107 Warwick Ave Cranston R.I. This case is still in the Superior Court of R.I. Providence County.

The case brought against Para-Chem Inc is now in this First Circuit Court of Appeals. It involves the substance known as Magnum Plus Gold which the Defendant distributes to the public under the ruse that it is a water based safe product ( MSDS stated "0" VOC's) when in fact it is a toxic substance containing many VOC's.

These are real, not imagined issues for which Defendants Brown allege Plaintiff is "Bizarre." In fact there were other incidents for which Plaintiff did not bring suit including a Dentist that allowed by human error xray tank fluids to flow through a ceiling into Plaintiff's Pediatric suite below. DEM evaluated this situation and described it as a " hazardous" silver chromium based compound, advising Plaintiff to not allow patients as children to come in contact with the areas so affected ( Tom Campbell/RI DEM April 17, 1996)

CONSOLIDATION

In December 2003, Plaintiff motioned the lower court by objecting to Defendants' motion to consolidate the cases and this motion was never acted upon. It was simply ignored either by excusable neglect or otherwise. As can be seen by the Decision in this case (Exhibit A) the cases were heard together, decided together, and for all intents and purposes are one case. Plaintiff's motion to object on the basis that she wanted to protect the families from information that concerned their children's private health care- sensitive issues as medical neglect and suspicions of abuse- were simply not even addressed. Both counsel for the Defendants appeared together at every hearing. The cases were essentially one and the same. The Federal questions for each of the families arose out of different issues, the facts laws and discovery, transactions

for each case were different but they were still heard together. Under Rule 42 to avoid further prejudice to her, the Plaintiff motioned that all proceedings be separate including trials. All proceedings were not separate- this case was consolidated. Memorandum and Order dated April 21, 2004 reads that " although the cases have not been consolidated, they are factually related and involve the same Plaintiff and similarly situated Defendants and the Motions present the same issues." Plaintiff never received notice of any order to consolidate or not to consolidate. It was not acted upon. Plaintiff took the same leave as the court to address all appeals in a form of consolidated cases. Since no order was signed yet motions remained unaddressed this case remains consolidated in all technical points- all proceedings, all appeals, all hearing and in the Decisions and Orders.

Wherefore, Plaintiff moves this Honorable Court to review carefully the decision to dismiss this case, and find in favor of the Plaintiff to have this case remanded for a trial by her peers. Plaintiff must be afforded the rights to witnesses and supporting evidence.

Respectfully submitted by
Geraldine Mills, M.D. prose

G. Mills MD

Geraldine Mills, M.D.
191 Squantum Drive
Warwick, R.I. 02888
401-463-8433

CERTIFICATION

July I hereby certify that a true and accurate copy of the within was mailed this 8th day of June to Counsel for the above Defendants, James Currier at 128 Dorrance St Prov RI 02903 and Ricahrd Fleury at 4172 Post Rd East Greenwich R.I. 02818 postage prepaid.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GERALDINE MILLS, M.D., Plaintiff, v. STEVE BROWN and JOYCE BROWN, Defendants. | ) | C.A. 03-422L |
| GERALDINE MILLS, M.D., Plaintiff, v. DEBORAH CINQUEGRANA and BRIAN CINQUEGRANA, Defendants. | ) | C.A. No. 03-457L |

DECISION AND ORDER

Ronald R. Lagueux, Senior United States District Judge

These matters are before the Court on an "appeal" filed by Plaintiff, Geraldine Mills to a Report and Recommendation issued by Magistrate Judge David Martin in each case counseling dismissal of each case; and to a Memorandum and Order applicable to both cases denying Plaintiff's Motions to Amend her original